UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| BRACKFIELD & ASSOCIATES PARTNERSHIP, | ) ) ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. _____ ) |
| SAK CAPITAL PARTNERS, LLC and ARGON REAL ESTATE, LLC, | ) ) ) ) |
| Defendants. | ) ) |

# COMPLAINT

COMES NOW, Plaintiff, Brackfield & Associates Partnership, a Tennessee general partnership ("Brackfield" or "Plaintiff"), by and through undersigned counsel, and sues Defendants, Sak Capital Partners, LLC ("Sak Capital") and Argon Real Estate, LLC ("Argon") (collectively "Defendants") and for its cause of action against Defendants respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to Section 39 of the Latham Act, 15 U.S.C. § 1121, and pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Brackfield's related state law claims pursuant to 28 U.S.C. § 1367.

2. The United States District Court also has original jurisdiction of this case under 28 U.S.C. § 1332(a), which provides that the district courts have original jurisdiction of civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interests and costs.

3. For purposes of determining whether diversity jurisdiction exists, a partnership has the citizenship of each individual partner. *Grant Cty. Deposit Bank v. McCampbell*, 194 F.2d 469, 471 (6th Cir. 1952). Brackfield is a Tennessee general partnership that has three partners that all reside in Tennessee. Therefore, Brackfield has the citizenship of Tennessee. *See id.*

4. For purposes of determining whether diversity jurisdiction exists, a limited liability company has the citizenship of each of its members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732–33 (6th Cir. 2002)). Defendant Sak Capital is a limited liability formed under the laws of Delaware and with its principal place of business and managing member located in Florence, Alabama. *See* **Exhibit 1** (Sak Capital, LLC Entity Details obtained from the Delaware Secretary of State). Upon information and belief, the members of Sak Capital are citizens of Alabama and/or citizens of States other than Tennessee. Therefore, Sak Capital appears to have the citizenship of Alabama and/or States other than Tennessee. Sak Capital can be served with process via its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

5. Defendant Argon is a New York limited liability company with its principal place of business located in Kings County, New York. Upon information and belief, the members of Argon are residents of New York, Arizona, and/or States other than Tennessee. *See* **Exhibit 2** (Argon Real Estate, LLC Entity Information obtained from the New York Secretary of State). Therefore, Argon appears to have the citizenship of New York, Arizona, and/or States other than Tennessee. Argon can be served with process via its registered agent Gino Ammirati, 7913 East Pepper Tree Lane, Scottsdale, Arizona 85250.

6. The parties here are citizens of different states, and, as determined by 28 U.S.C. § 1446(c), the amount in controversy in this case is greater than $75,000.

7. This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants conduct business in the Northern Division of the Eastern District of Tennessee and because Defendants have engaged in acts or omissions outside of this State causing injury within this State and this District, and have distributed false and misleading advertisements within this State and this District in the ordinary course of trade, and/or have otherwise made or established contacts with this State and District sufficient to permit the exercise of personal jurisdiction.

8. Venue is proper under 8 U.S.C. § 1391(b) because the events or omissions giving rise to the claims stated herein occurred in the Northern Division of the Eastern District of Tennessee and because the property that is the subject of this action is situated in the Northern Division of the Eastern District of Tennessee.

9. Venue is proper as the forum selection clause contained in the agreements by and between Brackfield and Sak Capital dictate that any suit associated with the agreements must be brought in the state and federal courts of Knox County, Tennessee.

## II. FACTUAL INFORMATION

10. This dispute centers on the sale and purported brokerage of a ten-property portfolio of self-storage properties located in Knoxville, Tennessee and surrounding areas. The properties at issue are described as follows: (1) 10510 Kingston Pike, Knoxville, Tennessee; (2) 9001 Oak Ridge Highway, Knoxville, Tennessee; (3) 2924 E Lamar Alexander Pkwy, Maryville, Tennessee; (4) 3219 E Lamar Alexander Pkwy, Maryville, Tennessee; (5) 11115 Chapman Highway, Seymour, Tennessee; (6) 1121 S Old Sevierville Pike, Seymour, Tennessee; (7) 4879 E Lee Hwy,

Loudon, Tennessee; (8) 1272 Highway 321 N, Lenoir City, Tennessee; (9) 300 Mialaquo Place, Loudon, Tennessee; and (10) 106 Walnut Grove Rd., Vonore, Tennessee (hereinafter collectively referred to as the "Properties").

11. Prior to December 15, 2021, the Properties were owned by Brackfield.

12. On or about July 23, 2021, Brackfield agreed to sell and convey the Properties to Sak Capital pursuant to Purchase and Sale Agreement I ("Purchase Agreement I") and Purchase and Sale Agreement II ("Purchase Agreement II") (Purchase Agreement I and Purchase Agreement II are collectively referred to as the "Agreements") by and between Brackfield and Sak Capital. A true and correct copy of Purchase Agreement I is attached hereto as *Exhibit 3*. A true and correct copy of Purchase Agreement II is attached hereto as *Exhibit 4*.

13. Pursuant to Purchase Agreement I and Purchase Agreement II, Sak Capital had sixty (60) days following the Effective Date of July 23, 2021 to examine, inspect, and perform due diligence to determine if it wished to proceed to purchase the Properties (hereinafter the "Due Diligence Period"). *See Exhibit 3*, p. 9. The Due Diligence Period, initially set to terminate on or about September 21, 2021, was subsequently extended by agreement of the parties to end on October 4, 2021 and then further extended to end on October 8, 2021. Pursuant to Paragraph 7(c) of Purchase Agreement I and Purchase Agreement II, Sak Capital could terminate the Agreements by giving written notice of termination to Brackfield. *See Exhibit 3*, p. 10.

14. Paragraph 21(n) of Purchase Agreement I and Paragraph 21(n) of Purchase Agreement II state as follows:

> Confidentiality. Purchaser and its representatives shall hold in confidence all data and information obtained with respect to the condition, operation and management of the Property, whether obtained before or after the execution and delivery hereof, and shall not use such data or information for purposes unrelated to this Agreement or disclose the same to others except as expressly permitted hereunder. The preceding sentence shall not be construed to prevent Purchaser from disclosing to

its prospective lenders or investors, or to its officers, directors, attorneys, accountants, architects, engineers and consultants with a need to know such information to perform their designated tasks in connection with Purchaser's inspection and proposed acquisition of the Property, provided Purchaser advises any such party of the confidential nature of the information disclosed. However, Purchaser shall not have this obligation concerning information which: (a) is already known to Purchaser or any of its representatives; (b) is published or becomes publicly available through no fault of the Purchaser; (c) is rightfully received from a third party under no obligation of confidentiality; (d) is required to be disclosed by law; or (e) is independently developed by Purchaser or any of its representatives without reliance on any confidential information. In the event this Agreement is terminated or Purchaser fails to perform hereunder, Purchaser shall promptly destroy or return to Seller any statements, documents, schedules, exhibits or other written information obtained from Seller in connection with this Agreement or the transactions contemplated hereby but Purchaser may retain electronic copies (1) to the extent required by any law, regulation, compliance requirements, or internal document retention policy or procedure, (2) the extent electronic deletion cannot be done without undue effort or expense, (3) that may be found in analyses, compilations, models, studies or other documents produced by Purchaser or its representatives, or (4) that may be required for the purposes of defending, pursuing or maintaining any litigation or other proceeding relating to this Agreement or the Property; however, any confidential information so retained (pursuant to any of clauses (1) through (4), will be treated as confidential in accordance with this Agreement. In the event of a breach or threatened breach by Purchaser or its agents, consultants and/or lenders of this paragraph, Seller shall be entitled to an injunction restraining Purchaser from disclosing, in whole or in part, such confidential information. Nothing herein shall be construed as prohibiting Seller from pursuing any other available remedy at law or in equity for such breach or threatened breach. At no time shall Purchaser or Seller issue any press release pertaining in any way to the sale of the Property or this Agreement.

See *Exhibit 3*, p. 25-26; *Exhibit 4*, p. 25-26. Thus, subject to limited exceptions, all data and information that Sak Capital obtained associated with the Properties was to remain confidential.

15. Pursuant to Paragraph 6(b)(1) in Purchase Agreement I and Purchase Agreement II, Sak Capital represented and acknowledged that it had the financial resources to purchase the Properties for the contracted purchase price. See *Exhibit 3*, p.7; *Exhibit 4*, p. 7.

16. Upon information and belief, Sak Capital did not possess the financial resources to purchase the Properties for the contracted purchase price on July 23, 2021.

17. Subsequent to executing Purchase Agreement I and Purchase Agreement II, upon information and belief, Sak Capital contracted Argon to broker the sale of the Properties without the contractual right to do so or the permission and consent of Brackfield despite the fact that Brackfield was the record title owner of the Properties.

18. Upon information and belief, Argon agreed to broker and/or advertise the sale of the Properties despite the fact that it did not have the permission or consent of the owner of the Properties to do so and despite that fact that Paragraph 19(a) of Purchase Agreement I and Purchase Agreement II acknowledges and agrees that there is no broker, finder, or intermediary or any kind associated with the Properties. *See **Exhibit 3***, p. 22; ***Exhibit 4***, p. 21.

19. Upon information and belief, Argon and Sak Capital advertised the sale of the Properties and falsely advertised that Sak Capital was the seller and/or owner of the Properties.

20. Brackfield has never granted Sak Capital and/or Argon permission, consent, and/or the contractual right to broker and/or advertise the sale of the Properties to other persons or entities.

21. Prior to September 7, 2021, Argon falsely represented to CVC MGMT, LLC that it was the exclusive broker of the Properties.

22. Argon presented a Non-Disclosure \ Confidentiality Agreement to CVC MGMT, LLC dated September 8, 2021 falsely representing and advertising that Sak Capital was the "Seller" of the Properties. A true and correct copy of the Non-Disclosure \ Confidentiality Agreement is attached hereto as ***Exhibit 5***.

23. Argon drafted and/or prepared the Non-Disclosure \ Confidentiality Agreement falsely representing and advertising that Sak Capital as the "Seller" of the Properties. *See **Exhibit 5***.

24. Despite having express knowledge that Sak Capital was not the record title owner or seller of the Properties, Eugene Sak, a Principal of Sak Capital, executed the Non-Disclosure \ Confidentiality Agreement on behalf of Sak Capital stating and that Sak Capital was the "Seller" of the Properties. *See Exhibit 5*.

25. Prior to October 8, 2021, Sak Capital created an electronic data access workspace and shared Brackfield's data, financial reports, and information associated with the Properties to potential purchasers.

26. Upon information and belief, Sak Capital and Argon made false and misleading statements of facts and advertisements concerning the ownership of the Properties and these advertisements were introduced into interstate commerce.

27. On October 8, 2021, Sak Capital gave written notice to Brackfield that it was terminating Purchase Sale Agreement I and Purchase Sale Agreement II pursuant to Section 7(c) of these agreements. *See Exhibit 6* (Notice of Terminations dated October 8, 2021). Once the Agreements were terminated, Sak Capital no longer possessed the contractual right to purchase the Properties and all rights, benefits, and obligations of Purchase Sale Agreement I and Purchase Sale Agreement II were terminated.

28. Prior to December 12, 2021, Argon drafted and/or prepared a Non-Disclosure \ Confidentiality Agreement falsely representing and advertising DH Self Storage, LLC as the "Seller" of the Properties. *See Exhibit 7* (Non-Disclosure \ Confidentiality Agreement dated September 7, 2021).

29. Brackfield has never granted DH Self Storage, LLC permission, consent, and/or the contractual right to broker and/or advertise the sale of the Properties to other persons or entities as falsely represented by Argon.

Page 7 of 19

4955652.1

Case 3:22-cv-00037-CEA-DCP   Document 1   Filed 02/01/22   Page 7 of 19   PageID #: 7

30. DH Self Storage, LLC has never owner, operated, and/or managed the Properties at any time.

31. Subsequent to the termination of Purchase Sale Agreement I and Purchase Sale Agreement II, Brackfield entered into a contractual agreement with Crystal View Capital Fund III, LLC and its assigns for the purchase and sale of the Properties.

32. Despite the fact that Sak Capital terminated Purchase Sale Agreement I and Purchase Sale Agreement II on October 8, 2021, Sak Capital subsequently made false claims that it possessed the contractual right to purchase the Properties.

33. Despite the fact that Sak Capital terminated Purchase Sale Agreement I and Purchase Sale Agreement II on October 8, 2021, Sak Capital attempted to induce Crystal View Capital Fund III, LLC and its assigns not to purchase the Properties in attempt to tortiously interfere with Brackfield's contracts and business relationships.

34. Upon information and belief, Sak Capital and Argon falsely advertised that Sak Capital possessed the contractual right to purchase the Properties subsequent to October 8, 2021.

35. By sharing Brackfield's data, financial reports, and information associated with the Properties, Sak Capital breached the confidentiality provisions in Purchase Sale Agreement I and Purchase Sale Agreement II.

### III. CAUSES OF ACTION AGAINST SAK CAPITAL PARTNERS, LLC

#### COUNT ONE- PROMISSORY FRAUD

36. Brackfield re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

37. Sak Capital negotiated and entered into Purchase Sale Agreement I and Purchase Sale Agreement II on July 23, 2021 with no intention of complying with the confidentiality

provisions in the Agreements, and with the knowing and affirmative intention at the time of execution not to comply with the confidentiality provisions in the Agreements, but instead to breach the same by gaining access to Brackfield's confidential data, financial reports, and information associated with the Properties and a business advantage not otherwise available to Sak Capital but for the breaching of the Agreements.

38. Brackfield justifiably relied upon Sak Capital's explicit confidentiality commitment and agreement not to use to Brackfield's confidential data, financial reports, and information associated with the Properties for purposes unrelated to the Agreements or to disclose the same to others except as expressly permitted by the Agreements.

39. Pursuant to Purchase Sale Agreement I and Purchase Sale Agreement II, Sak Capital represented and acknowledged that it had the financial resources to purchase the Properties for the contracted purchase price. At the time of executing Purchase Sale Agreement II and Purchase Sale Agreement II knew that it indeed did not have the financial resources to purchase the Properties for the contracted purchase price.

40. Sak Capital did defraud Brackfield as aforesaid thereby proximately causing Brackfield damages in an amount to be determined at trial.

## COUNT TWO- BREACH OF CONTRACT

41. Brackfield re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

42. A valid and enforceable contract was formed when Sak Capital entered into Purchase Sale Agreement I and Purchase Sale Agreement II on July 23, 2021. Pursuant to the confidentiality provisions in Purchase Sale Agreement I and Purchase Sale Agreement II, subject

to limited exceptions, all data and information that Sak Capital obtained associated with the Properties was to remain confidential.

43. Pursuant to Purchase Sale Agreement I and Purchase Sale Agreement II, Sak Capital represented and acknowledged that it had the financial resources to purchase the Properties for the contracted purchase price.

44. Sak Capital materially breached the confidentiality provisions in Purchase Sale Agreement I and Purchase Sale Agreement II by sharing Brackfield's data, financial reports, and information associated with the Properties with Argon and other persons and entities other than Sak Capital's prospective lenders or investors, officers, directors, attorneys, accountants, architects, engineers and consultants with a need to know such information to perform their designated tasks in connection with Sak Capital's inspection and proposed acquisition of the Properties.

45. Sak Capital shared Brackfield's data, financial reports, and information associated with the Properties and such information was not: (1) already known to Sak Capital or any of its representatives; (2) published or publicly available through no fault of Sak Capital; (3) rightfully received from a third party under no obligation of confidentiality; (4) required to be disclosed by law; or (5) independently developed by Sak Capital or any of its representatives without reliance on any confidential information.

46. Sak Capital further breached Purchase Sale Agreement I and Purchase Sale Agreement II by failing to advise Argon of the confidential nature of Brackfield's data, financial reports, and information associated with the Properties and by failing to destroy or return Brackfield's data, financial reports, and information associated with the Properties after terminating Sale Agreement I and Purchase Sale Agreement II.

47. Finally, Sak Capital breached Purchase Sale Agreement I and Purchase Sale Agreement II by not possessing the financial resources to purchase the Properties for the contracted purchase price at the time of executing the Agreements on July 23, 2021.

48. As a direct and proximate result of the breach of contract by Sak Capital, Brackfield has been damaged in an amount to be determined at trial.

## COUNT THREE- DETRIMENTAL RELIANCE, QUANTUM MERUIT, AND UNJUST ENRICHMENT

49. Plaintiff re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

50. Alternatively, Brackfield pleads detrimental reliance, quasi contract, and quantum meruit to prevent unjust enrichment and as a remedy implied by law. Should any agreement between Brackfield and Sak Capital be deemed to fail, such failure would result in unjust enrichment entitling Brackfield to recover damages under detrimental reliance, quantum meruit, and/or under a quasi-contractual theory.

51. Specifically, Sak Capital has received a benefit, at the expense of Brackfield, and under the circumstances it would be unjust for Sak Capital to retain the benefit.

## COUNT FOUR- FALSE ADVERTISING UNDER THE LANHAM ACT- 15 U.S.C. § 1125(a)(1)(B)

52. Brackfield re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

53. Sak Capital commercially advertised and promoted that it was the seller or owner of the Properties. These advertisements and promotions were false, misleading, confusing, and deceptive, and they contain false or misleading descriptions of fact, or misrepresentations of fact,

concerning the nature, characteristics, and qualities of the Properties, and the misrepresentations are material.

54. Sak Capital's misrepresentation that it was the seller or owner of the Properties deceived potential purchasers of the Properties and the misrepresentations likely influenced deceived potential purchasers' purchasing decisions.

55. The advertisements advertising and promoting Sak Capital as the seller or owner of the Properties were introduced into interstate commerce and caused Brackfield to take corrective measures and to incur additional costs and expenses that would not have otherwise been incurred.

56. Sak Capital is in violation of Section 43(a)(1)(B) of the Latham Act, 15 U.S.C. § 1125(a)(1)(B).

57. Upon information and belief, Sak Capital's false and misleading representations were made knowingly and willfully, with an intent to confuse the public and to gain an unfair competitive advantage over Brackfield.

58. As a result of Sak Capital's false and misleading advertisements, Brackfield has been damaged in an amount to be determined at trial.

## COUNT FIVE- VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

59. Brackfield re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

60. Sak Capital's actions constitute a violation of the Tennessee Consumer Protection Act (the "Act") as codified in Tenn. Code Ann. § 47-18-101, *et seq*.

61. Unfair or deceptive acts or practices affecting the conduct of any trade or commerce are prohibited by Tenn. Code Ann. § 47-18-104.

62. A private right of action for violations of the Act is provided by Tenn. Code Ann. § 47-18-109 for any person who suffers an ascertainable loss as a result of the use or employment of an unfair or deceptive act or practice. If the unfair or deceptive act or practice was willful or knowing, a court may award treble damages and provide such other relief as it considers necessary and proper. *See* Tenn. Code Ann. § 47-18-109(a)(3).

63. The Act also provides, pursuant to Tenn. Code Ann. § 47-18-109(e)(1), that a court may award reasonable attorney's fees and costs upon finding a violation of the Act.

64. Sak Capital's actions, as described in the paragraphs above, constitute unfair or deceptive acts and practices. Specifically, Sak Capital falsely advertised and represented that it was the seller or owner of the Properties when it knew that Brackfield was the record title owner of the Properties. Moreover, Sak Capital entered into a purported contractual agreement with CVC MGMT, LLC falsely representing and stating that Sak Capital was the "Seller" of the Properties.

65. Sak Capital's actions, as described in the paragraphs above, constitute violations of Tenn. Code Ann. § 47-18-104(b)(1) as Sak Capital entered into an agreement falsely representing itself as the "Seller" of the Properties owned by Brackfield.

66. Sak Capital's actions, as described in the paragraphs above, constitute violations of Tenn. Code Ann. § 47-18-104(b)(3) as Sak Capital falsely represented that it was the seller or owner of the Properties to the extent that it caused confusion or misunderstanding as to the affiliation or association of Sak Capitol and/or Brackfield as to the Properties.

67. Sak Capital's actions, as described in the paragraphs above, constitute violations of Tenn. Code Ann. § 47-18-104(b)(9) by advertising the Properties owned by Brackfield with no intent to sell them as advertised.

68. As a result of Sak Capital's willful violation of the Tennessee Consumer Protection Act, Brackfield is entitled to treble damages.

### COUNT SIX- INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP/CONTRACTING

69. Brackfield re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

70. After terminating Purchase Sale Agreement I and Purchase Sale Agreement II on October 8, 2021, Sak Capital wrongfully attempted to induce Crystal View Capital Fund III, LLC and its assigns not to purchase the Properties despite that fact that a binding contract had been formed by and between Brackfield and Crystal View Capital Fund III, LLC and its assigns.

71. Upon information and belief, Sak Capital employed untruthful, misleading, fraudulent or other unlawful means of persuasion with Crystal View Capital Fund III, LLC and its assigns while Crystal View Capital Fund III, LLC and its assigns were under contract with Brackfield in order to induce Crystal View Capital Fund III, LLC and its assigns to abruptly and without justification amend the terms of the agreement and/or to terminate the contract by and between Brackfield and Crystal View Capital Fund III, LLC and its assigns.

72. As a result of Sak Capital's interference with Brackfield's business relationship and contract with Crystal View Capital Fund III, LLC and its assigns, Brackfield has been damaged in an amount to be determined at trial.

### III. CAUSES OF ACTION AGAINST ARGON REAL ESTATE, LLC

### COUNT ONE- FALSE ADVERTISING UNDER THE LANHAM ACT- 15 U.S.C. § 1125(a)(1)(B)

73. Brackfield re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

74. Argon commercially advertised and promoted that Sak Capital and/or DH Self Storage, LLC was the seller or owner of the Properties. These advertisements and promotions were false, misleading, confusing, and deceptive, and they contain false or misleading descriptions of fact, or misrepresentations of fact, concerning the nature, characteristics, and qualities of the Properties, and the misrepresentations are material.

75. Argon's misrepresentation that Sak Capital and/or DH Self Storage, LLC was the seller or owner of the Properties deceived potential purchasers of the Properties and the misrepresentations likely influenced deceived potential purchasers' purchasing decisions.

76. The advertisements advertising and promoting Sak Capital and/or DH Self Storage, LLC as the seller or owner of the Properties were introduced into interstate commerce and caused Brackfield to take corrective measures and to incur additional costs and expenses that would not have otherwise been incurred.

77. Argon is in violation of Section 43(a)(1)(B) of the Latham Act, 15 U.S.C. § 1125(a)(1)(B).

78. Upon information and belief, Argon's false and misleading representations were made knowingly and willfully, with an intent to confuse the public and to gain an unfair competitive advantage over Brackfield.

79. As a result of Argon's false and misleading advertisements, Brackfield has been damaged in an amount to be determined at trial.

### COUNT TWO- VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

80. Brackfield re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

81. Argon's actions constitute a violation of the Tennessee Consumer Protection Act (the "Act") as codified in Tenn. Code Ann. § 47-18-101, *et seq*.

82. Unfair or deceptive acts or practices affecting the conduct of any trade or commerce are prohibited by Tenn. Code Ann. § 47-18-104.

83. A private right of action for violations of the Act is provided by Tenn. Code Ann. § 47-18-109 for any person who suffers an ascertainable loss as a result of the use or employment of an unfair or deceptive act or practice. If the unfair or deceptive act or practice was willful or knowing, a court may award treble damages and provide such other relief as it considers necessary and proper. *See* Tenn. Code Ann. § 47-18-109(a)(3).

84. The Act also provides, pursuant to Tenn. Code Ann. § 47-18-109(e)(1), that a court may award reasonable attorney's fees and costs upon finding a violation of the Act.

85. Argon's actions, as described in the paragraphs above, constitute unfair or deceptive acts and practices. Specifically, Argon falsely advertised and represented that Sak Capital and/or DH Self Storage, LLC was the seller or owner of the Properties when it knew that Brackfield was the record title owner of the Properties. Moreover, Argon drafted contractual agreements falsely representing Sak Capital and/or DH Self Storage, LLC as the seller or owner of the Properties.

86. Argon's actions, as described in the paragraphs above, constitute violations of Tenn. Code Ann. § 47-18-104(b)(3) as Argon falsely represented Sak Capital and/or DH Self Storage, LLC was the seller or owner of the Properties to the extent that it caused confusion or misunderstanding as to the affiliation or association of Sak Capitol and/or Brackfield as to the Properties.

87. Argon's actions, as described in the paragraphs above, constitute violations of Tenn. Code Ann. § 47-18-104(b)(9) by advertising the Properties owned by Brackfield with no intent to sell them as advertised.

88. As a result of Argon's willful violation of the Tennessee Consumer Protection Act, Brackfield is entitled to treble damages.

## COUNT THREE- UNJUST ENRICHMENT

89. Brackfield re-adopts and re-alleges the allegations of the above and foregoing paragraphs.

90. Argon's actions, as described in the paragraphs above, created a benefit conferred upon Argon by Brackfield, Argon appreciated such benefit, and accepted such benefit under circumstances that it would be inequitable for Argon to retain the benefit without payment or value thereof. Specifically, Argon falsely advertised and represented that Sak Capital and/or DH Self Storage, LLC was the seller or owner of the Properties when it knew that Brackfield was the record title owner of the Properties. Moreover, Argon drafted contractual agreements falsely representing Sak Capital and/or DH Self Storage, LLC as the seller or owner of the Properties.

91. Upon information and belief, Argon profited from brokering the Properties despite not having the permission or consent of Brackfield to broker the Properties. Moreover, Brackfield never granted Argon the contractual right to broker the Properties. Argon has received a benefit, at the expense of Brackfield, and under the circumstances it would be unjust for Argon to retain the benefit.

WHEREFORE, PREMISES CONSIDERED, and by virtue of the foregoing acts complained of, Plaintiff prays for judgment against Defendants as follows:

Page 17 of 19

4955652.1
Case 3:22-cv-00037-CEA-DCP   Document 1   Filed 02/01/22   Page 17 of 19   PageID #: 17

92. That this Complaint be served upon Defendants and that they be required to answer the same;

93. That Plaintiff be awarded compensatory damages, consequential damages, and corrective damages in an amount be proven at trial, but not less than $250,000.00, as a result of Defendants' fraud, breach of contract, false advertising, intentional interference with business and/or contract, unjust enrichment, and unfair and deceptive business practices;

94. That Plaintiff be awarded punitive damages from Defendants as a result of their intentional, malicious, fraudulent, and/or reckless conduct, in an amount to be proven at trial, or in the alternative, that Plaintiff be awarded treble damages for Defendants' willful violation of the Tennessee Consumer Protection Act;

95. That Plaintiff be awarded its costs and attorneys' fees incurred in prosecuting this matter, pursuant to Tenn. Code Ann. § 47-18-109(e)(1), 15 U.S.C. § 1117, and the terms of contractual agreements between the parties;

96. That Plaintiff be awarded pre-judgment interest on the forgoing sums;

97. That Plaintiff be awarded such other, further and general relief as this Court may deem necessary under the circumstances and as equity requires; and

98. That a jury of six be empaneled in this action for all issues so triable.

Respectfully submitted this 1st day of February, 2022.

                                        WOOLF, McCLANE, BRIGHT, ALLEN
                                        & CARPENTER, PLLC

                                        /s/ C. Gavin Shepherd
                                        C. Gavin Shepherd (BPR No. 033066)
                                        Post Office Box 900
                                        Knoxville, Tennessee 37901-0900
                                        (865) 215-1000
                                        gshepherd@wmbac.com

                                        *Attorneys for Plaintiff Brackfield & Associates Partnership*